UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
UNITED STATES OF AMERICA,

    -against-                                        **MEMORANDUM & ORDER**

                                                              01-CR-1265 (NGG)

DONELLA HARRIS,

                Defendant.
----------------------------------------------------------------------x

      Defendant Donella Harris ("Harris" or "Defendant") pleaded guilty before this court on December 11, 2001. Defendant's infant son, Kalel Reyals, currently three years old, was taken from Defendant's custody by the New York City Administration for Children's Services ("ACS") and temporarily placed in foster care. Defendant is seeking custody of her son in a proceeding that is currently pending before the Honorable Bryanne Hammil in Family Court of the State of New York, Kings County ("Family Court"). On January 29, 2007, the United States Probation Department ("Probation Department") received a subpoena issued by the Family Court requesting information pertaining to Defendant's compliance with the terms of her probation. Defendant had signed a waiver releasing these records to ACS. Defendant now contests the release of these documents, which this court deems to be a retraction of her initial waiver. Now before this court is a motion by ACS requesting that the court grant the Probation Department permission to disclose to the Family Court drug test results for Defendant obtained by the Probation Department as a condition of her probation. Whether records obtained by the Probation Department should be disclosed to protect the welfare of a child appears to be a question of first impression in this circuit.

## ANALYSIS

A district court "should not authorize disclosure of a presentence report to a third person in the absence of a compelling demonstration that disclosure of the report is required to meet the ends of justice." United States v. Charmer Indus., Inc., 711 F.2d 1164, 1175 (2d Cir. 1983). A "central burden" to make the required showing of need by a third party is "the degree to which the information in the presentence report cannot be obtained from other sources." Id. at 1177. However, "the burden of showing need may be less when the movant is a public body seeking to perform a public duty." Id.; cf. United States v. Sobotka, 623 F.2d 764, 768 (2d Cir. 1980) (holding that a bar grievance committee failed to meet even lesser burden because it made no showing of "particularized need"). The Second Circuit explained that it was particularly concerned by the disclosure of presentence reports to third parties for two reasons. First, the potential for hearsay statements or inaccurate or irrelevant information to be contained therein was high:

> The reports frequently contain hearsay and information not relevant to the crime charged. If a defendant challenges the accuracy of a statement in the report, the court may, in its discretion, decline to hold an evidentiary hearing with respect to the challenges. . . . [And,] there may be no opportunity, even at a hearing, for the defendant to confront the maker of the disputed hearsay statement. . . . Thus, although the safeguards provided by Rule 32(c) [of the Fed. R. Crim. P.] ensure that any material misinformation in the report that is called to the court's attention will not affect the sentencing decision, they do not mean that the presentence report contains no such information.

Charmer, 711 F.2d at 1175. Second, the Second Circuit based its ruling in Charmer on the premise that disclosure of a presentence report to a third party would jeopardize the relationship of trust between the probationer and probation officer and would compromise the probation

officer's ability to obtain information from the probationer. See United States Dep't of Justice v. Julian, 486 U.S. 1, 12 (1988) (citing Charmer, 711 F.2d at 1173-76).

As Defendant rightly points out and as ACS concedes (Defendant's Letter in Opposition to Disclosure ("Def. Letter") at 4-5; ACS Letter in Furtherance of Disclosure at 3-4), courts in this circuit have routinely denied requests by third parties for a defendant's probation records. See, e.g., Charmer, 711 F.2d 1164 (denying disclosure of presentence report sought by Arizona Department of Liquor Licenses and Control for use in a proceeding to revoke a liquor license); U.S. v. Moore, 949 F.2d 68 (2d Cir. 1991) (denying release of defendant's accomplice's presentence report for use in appeal); In re Application for Disclosure of Probation Records, 03 Cr. 296 (RWS), 2005 U.S. Dist. LEXIS 5869 (S.D.N.Y. April 6, 2005) (denying disclosure of probation records for the purpose of ascertaining probationer's finances for use in enforcing a civil money judgment). In this case, however, Defendant's probation records are sought by the Family Court for a uniquely imperative concern that none of the cases in this circuit denying access to probation records address -- to wit, the welfare of a child.

Indeed, unlike the cases cited above, ACS has made a "compelling demonstration" that disclosure of Defendant's drug test results to the Family Court is necessary to meet the "ends of justice." See Charmer, 711 F.2d at 1175. Specifically, ACS requests that these records be produced to Justice Hammil, who will make a determination as to whether or not Defendant is fit to have custody of her three-year-old son. The duty of the Family Court is to adjudicate the question of Defendant's ability to raise her child and to protect the child's welfare. Whether past use of a controlled substance renders a parent unfit to care for a child is a question to be resolved by the Family Court. Certainly, however, the existence of multiple drug test failures provides the

Family Court with the opportunity to thoroughly investigate the fact and extent of Defendant's past drug use, and what effect, if any, her prior drug use will have on her ability to care for her child. Indeed, the welfare of Defendant's son requires the disclosure of the drug test results in order to ensure that the Family Court's custody decision is made with the maximum amount of information available and relevant to Defendant's fitness as a parent.

Notably, ACS does not seek production of the presentence report or any statements or documents made or produced by Defendant to her probation officer. Rather, ACS solely seeks production of the results of drug tests Defendant was mandated to take during the course of her probation. The reports contain no statements based on hearsay, nor any statements which bear an indicia of unreliability or untrustworthiness. Consequently, the Second Circuit's concern regarding the production of hearsay statements and otherwise unreliable or irrelevant information to third parties is simply not at issue in this case. Similarly, ACS's request does not compromise the relationship of trust between Defendant and her probation officer because the drug tests were mandated by the terms of Defendant's probation and because the reports do not contain any statements made by any party, including Defendant, to Defendant's probation officer.

Finally, these drug test results are unique and are not readily obtained through other measures. Under the New York Family Court Act, a prima facie case of neglect is established by:

> [P]roof that a person *repeatedly* misuses a drug or drugs or alcoholic beverages, to the extent that it has or would ordinarily have the effect of producing in the user thereof a substantial impairment of judgment, or a substantial manifestation of irrationality.

N.Y. Fam. Ct. Act § 1046(a)(iii) (emphasis added). Therefore, every instance of a drug test

failure is relevant to the Family Court's determination of fitness, and the reports maintained by the Department of Probation constitute independent proof of repeated drug misuse on the part of the Defendant. As such, these particular drug test results are necessary for the Family Court's comprehensive evaluation of Defendant's ability to care for her child.

Nevertheless, Defendant argues that had it been necessary for the Family Court to have access to drug test results, Judge Hammil could have issued an order requiring that court's own set of drugs tests, or, in the alternative, it could conduct retroactive hair fiber analysis. (Def. Letter at 4.) First, the Family Court did not order its own drug tests; consequently it does not have independent access to drug test results. As to hair fiber analysis, Defendant has provided no evidence that hair fiber analysis would be as effective as urinalysis for detecting the fact and extent of Defendant's marijuana use. This is particularly true where, as here, Defendant had tested positive eighteen times during twenty-three months dating back to December 2002.

Defendant also contends that Defendant, herself, can testify to the fact and extent of her drug use. (Id.) Without the specific drug test results, however, the Family Court would be denied access to documents which would either tend to support or refute Defendant's statements. Therefore, the Family Court's ability to fully investigate Defendant's prior drug use would be substantially impaired.

## **CONCLUSION**

I find that ACS has met its burden in proving that the drug test reports maintained by the Department of Probation are required for the Family Court to be able to evaluate fully Defendant's fitness to care for her child. These records are necessary to meet the ends of justice, since they bear directly on the welfare of Defendant's child. Furthermore, the disclosure of these

drug test results will hardly compromise the defendant's relationship with her probation officer, and the records bear little likelihood of containing hearsay statements or irrelevant or inaccurate information. Therefore, I direct the Probation Department to provide the records under subpoena to ACS for the sole purpose of assisting the Family Court in making its determination of Defendant's fitness as a parent.

SO ORDERED.

Dated: August 6, 2007　　　　　　　　　　　　　　　/s/ Nicholas G. Garaufis
　　　　Brooklyn, N.Y.　　　　　　　　　　　　　　　Nicholas G. Garaufis
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge